IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LIEU TRAN                                  §
                                           §
v.                                         §          A-13-CA-145 LY
                                           §
PFLUGERVILLE  INDEPENDENT                  §
SCHOOL DISTRICT                            §

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are the Defendant Pflugerville Independent School District's Amended

Motion to Dismiss (Dkt. No. 9); Plaintiff's Response to Pflugerville Independent School District's

Amended Motion to Dismiss (Dkt. No. 11); and Defendant Pflugerville Independent School

District's Reply to Plaintiff's Response (Dkt. No. 12).   The District Court referred these Motions

to the undersigned Magistrate Judge for report and recommendation.

**I.  Background**

Plaintiff Lieu Tran ("Tran") was employed as a teacher at Connally High School in the

Pflugerville Independent School District ("PISD") beginning in the fall of 2006. Plaintiff's First

Amended Complaint at 6. Tran alleges he is an individual with a disability as he has been diagnosed

with bipolar and panic disorders. *Id.* at 5.

In his First Amended Complaint, Tran alleges that he requires certain accommodations in

order to function in the classroom because of his disorders.  These accommodations include a need

to paint the walls in his classroom a light or bright color such as yellow; a need for his own printer

in order to decrease stress; a requirement that he not be required to teach more than three hours at

a time consecutively; and a room to himself in which to take his breaks. *Id.* at 5-8.  The principal at

Connally High School from 2006 through the relevant period was Daniel Garcia. *Id.* at 8. Tran alleges that he apprised Garcia of his bipolar disorder and his need for accommodations in the first couple of weeks of the 2006-2007 school year. *Id.* Tran alleges that at this meeting, Garcia told him medical documentation of the disorders was not necessary. *Id.* at 9. Tran received these requested accommodations until 2010.

Tran alleges that at the beginning of the 2010-2011 school year, three days prior to students arriving for the first day of classes, Garcia required Tran to move to a new classroom—a classroom not painted yellow and lacking its own printer. *Id.* Additionally, Tran was required to give up his room during his conference period. *Id.* at 9-10. Tran asserts that he notified Human Resources about his bipolar disorder and need for accommodation. *Id.* He also asserts that at the beginning of the 2010 school year, he notified Human Resources and Superintendent Charles Dupre of his need to re-obtain his previous accommodations, and about the worsening symptoms of his bipolar disorder. *Id.* at 10-11. Tran asserts that, despite his requests, Garcia refused to grant him the same accommodations he had received the previous four years. *Id.* at p. 9. Tran also alleges that whenever the subject of accommodations had arisen in the past, Garcia had threatened to make Tran a floater or make him teach "repeater classes." *Id.* at 11.

Tran pleads that in September of 2010 he spoke to Human Resources about again having his own printer installed in his classroom. *Id.* On September 16, 2010, Tran provided a letter to the school from his doctor stating that Tran would benefit from having a printer in his classroom. *Id.* Eventually, Tran's attorney sent the school a demand letter, and PISD agreed to install a printer in Tran's classroom. *Id.* On November 24, 2010, Tran's psychiatrist sent another letter to PISD requesting that the school paint Tran's classroom with brighter colors and requesting that Tran have his room to himself for his conference periods. *Id.* at 12. Tran's attorney sent another demand letter

on December 9, 2010.  *Id.*   PISD ultimately retained a private consulting firm to address Tran's

requests for accommodation.  *Id.*  In January of 2011, Tran met with George Frias, who worked in

PISD's Human Resources Department. *Id.* at 13.  Frias agreed to grant Tran all of his requested

accommodations. *Id.*  On January 24, 2011, PISD approved Tran's request to have his walls painted.

*Id.*  In March of 2011, Tran spoke with Frias who informed Tran that Garcia wanted to wait until the

next year to implement his requested accommodations and was uncertain whether the requested

accommodations would be implemented.  *Id.*

Tran alleges in his First Amended Complaint that he experienced heightened stress because

of the lack of accommodations, leading to panic attacks and stuttering.  *Id.*  He pleads that, rather

than implement the requested accommodations, the school simply documented incidents "where he

exhibited stress and anger." *Id.*  Tran received a poor performance evaluation.  *Id.*  Tran also alleges

that the vice principal Sheila Reed harassed him by threatening that his contract would not be

renewed and by setting up meetings with him, only to make him wait, and then cancelling.  *Id.* at p.

14. Tran pleads that in March of 2011 Reed changed Tran's PDAS evaluation scores, and used this

as a basis for non-renewal of his contract.  *Id.*  Tran was informed that his employment contract

would not be renewed for the 2011-2012 school year.  *Id.*

On April 14, 2011, Tran met with a friend for coffee, and expressed that he was having

suicidal thoughts and thoughts of harming Garcia and Reed.  *Id.* at 15.  Tran voluntary sought

treatment at Shoal Creek Hospital.  *Id.*  As part of the commitment process, a nurse called Austin

Police Department and a mental health officer interviewed Tran.  *Id.*  They completed the necessary

paperwork for an emergency commitment, and Tran was committed into Shoal Creek, as he was

determined to be a danger to himself and others.  *Id.*   On April 19, 2011, as Tran was discharged

from Shoal Creek, he was arrested, based upon complaints made by Garcia and Reed, that Tran had

threatened to shoot them. *Id.* at 16.  Tran was later released on bail. *Id.*  On May 31, 2011, based

upon the testimony of Garcia and Reed, a Travis County Grand Jury indicted Tran. *Id.*  The case was

eventually dismissed. *Id.* at 3. Tran filed a charge with the EEOC asserting disability discrimination,

and it found cause to believe that Tran has been denied reasonable accommodations. *Id.* at 7, 17.

He also pursued having his contract non-renewal reversed based upon errors in the procedure, while

the school continued to pursue termination based on Tran's threatening statements made while at the

mental health facility. *Id.*

The parties apparently reached an agreement regarding Tran's separation from PISD, which

resulted in Tran resigning.  In his Amended Complaint, Tran states:

> In July 2011, pursuant to settlement discussions in the termination proceeding, Tran
> signed a settlement agreement that allowed him to bring forth this complaint that the
> Pflugerville I.S.D. failed to provide ADA accommodations and modifications.

Amended Complaint at 17.  In the motion to dismiss, PISD states that Tran suffered no adverse

action in his employment, because he voluntarily resigned, as part of a "separation agreement . . .

signed while represented by counsel," and characterizes Tran's claim under Title II of the Americans

with Disabilities Act ("ADA") as "simply an effort to finesse a Title II denial of access claim, from

an otherwise resolved employment issue."  Amended Motion to Dismiss (Dkt. No. 8) at 6-7.  From

this, the Court assumes that Tran released a number of employment claims when he signed the

separation agreement, but that the released claims did not include the Title II claim under ADA Tran

brings in this case.

In most instances, when an employee believes that he has been discriminated against in his

employment because of a disability, he brings such a claim under Title I of the ADA.  Title I

prohibits an employer from discriminating against a qualified individual with a disability because

of their disability in regard to "the hiring, advancement, or discharge of employees."  42 U.S.C.

§ 12112(a).  Tran has not pursued such a claim here, however, and the clear inference from the statements quoted above is that he has not done so because his separation agreement prevents it. Instead, Tran is pursuing his claim against PISD under Title II of the ADA.  Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Traditionally, Title II is used as the vehicle for disabled individuals to sue public entities whose facilities or programs are not accessible to them.  In order to establish a cause of action under Title II of the ADA, a person must establish:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits or discrimination is by reason of his disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

In this case Tran asserts that PISD (1) failed to reasonably accommodate him in violation of Title II of the ADA; and (2) failed to reasonably modify its services and environment for him in violation of Title II of the ADA.  PISD moves to dismiss Tran's claims asserting that: (1) Tran has not adequately pled that he has a "disability" as defined by the ADA; and (2) Tran has failed to identify any participation in, or benefit of, a program, activity or service, which he was denied.

## II.  Motion to Dismiss Standard

Defendants move to dismiss based upon FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### III.  Analysis

**A.     Has Tran Adequately Pled a Disability**?

PISD asserts that Tran has failed to adequately plead that he is "disabled" under the statute. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *Hale v. King*, 642 F.3d 492, 499–500 (5th Cir. 2011).  "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The EEOC regulations interpreting the ADA provide that:

> [a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to

be considered substantially limiting. Nonetheless, not every impairment will
constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii).  PISD asserts that Tran has failed to adequately plead that his condition

substantially limits any major life activity and that his First Amended Complaint should be dismissed

on this basis. *Hale v. King*,  642 F.3d 492 (5th Cir. 2011).

The Court disagrees.  Tran has pled that he suffers from bipolar disorder and panic disorder.

Plaintiff's First Amended Complaint at 1.  He states that his mental illness "effects his ability to

think, control his emotions, act normally and work." *Id.*  In the factual section of the Amended

Complaint, Tran alleges in quite a bit of detail how his illness can effect his ability to work, and how

it can become sufficiently disabling as to require hospitalization. *Id.* at ¶¶ 34, 48-55, 66.  Thus,

while in the portion of the Amended Complaint which sets forth his claim Tran only states that he

"is a 'qualified individual with a disability' as defined in 42 U.S.C. § 12131(2)," *id.* at ¶ 72, when

one reads the Amended Complaint as a whole, there is more than enough factual allegations to

conclude that Tran is alleging, at a minimum, that he suffers from a mental illness which

substantially limits him in the major life activity of working.  This is adequate to state a claim.

**B.      Denial of Benefits**

As its second argument, PISD asserts that Tran has failed to identify in his pleadings a denial

of access to a benefit, or exclusion from participation in a service, program or activity, as is required

to make out a claim pursuant to Title II of the ADA.  In essence, this argument questions Tran's

ability to bring an employment discrimination claim against PISD under Title II of the ADA.  Tran

does not directly respond to the essence of the argument, and simply contends that he was "denied

the benefits of accommodations and modifications at the work site and work schedule so that he

could function there," and denied "the benefit of a barrier free work place . . . of a non-hostile workplace . . . [and] of a work-place that was not retaliatory." Response (Dkt. No. 11) at ¶ 24.

There is a split of authority regarding whether an employment discrimination claim may be pursued under Title II of the ADA, though the bulk of the cases, and particularly the recent cases, hold that disability discrimination claims under the ADA may only be brought pursuant to Title I. As noted in the "Background" section, by its express terms, Title II of the ADA prohibits a public entity from excluding a "qualified person with a disability" from participating in, or denying that person the benefits of, the services, programs, or activities it offers the public, or from otherwise subjecting such person to discrimination. Importantly, Title II has its own definition of a "qualified person with a disability," distinct from the definition applicable to the other titles of the ADA. For purposes of Title II, a "qualified individual with a disability" is:

> "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

42 U.S.C. § 12131(2). Thus, for a person to be able to raise a Title II claim, he must be someone who "meets the essential eligibility requirements for the receipt of services or the participation in the programs or activities provided by" the public entity. PISD is a school district, and provides public educational services to the residents of its district. Tran does not allege, nor could he, that he is a person who meets the requirements for being eligible to receive the services, or participate in the programs, offered by PISD. He is not an elementary or secondary school student. Rather, he is a teacher. Indeed, Tran is one of the PISD employees who *provides* the services and programs PSID offers to the public.

Tran's inability to meet the definition of a "qualified person with a disability" for Title II

purposes is simply one manifestation of the inapplicability of Title II to employment discrimination

claims.  As noted, there is a split of authority on this issue.  There is, however, a gathering consensus

that the proper reading of the ADA is that Title I is the exclusive remedy in the ADA through which

one may pursue an employment-based disability discrimination claim.  The Second, Seventh, Ninth

and Tenth circuits have all squarely held that Title II does not apply to employment disputes, and the

decisions of the Second, Seventh, and Tenth circuits have all come in the past year.[1]  The Seventh

Circuit's  decision in *Brumfield*, authored by Judge Sykes and issued November 6, 2013, sets forth

the argument more cogently and eloquently than this Court could, and it will not be repeated here.

 *See Brumfield*, 735 F.3d at 624-30.   The only circuit to reach a contrary conclusion is the Eleventh,

in a decision 15 years ago.[2]  The Fifth Circuit has not addressed the issue, though it has recognized

the question as a legitimate one.  *Decker v. University of Houston*, 159 F.3d 1355 at *9 n.14 (Sep.

15, 1998).  This Court finds the reasoning of the four circuits mentioned above compelling, and the

reasoning of those decisions undermines the only circuit decision to the contrary.  As noted, in the

past year three Courts of Appeal have concluded that Title II provides no remedy for an employee

suing  for  employment  discrimination.   For  the  reasons  set  forth  there,  the  Court  concludes  that

Tran's suit under Title II fails to state a claim.

---

[1]*Brumfield v. City of Chicago*, 735 F.3d 619 (7th Cir. 2013); *Mary Jo C. v. New York State and Local Retirement System,* 707 F.3d 144 (2nd Cir. 2013);  *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303 (10th Cir. 2012);  *Zimmerman v. Or. Dep't. of Justice*, 170 F.3d 1169 (9th Cir. 1999).

[2]*Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist*., 133 F.3d 816 (11th Cir. 1998).

Alternatively, focusing on the language of Title II, because Tran fails to allege that he was denied participation in, or the benefits of, the services, programs or activities of PISD, he has failed to state a claim under Title II of the ADA.  Further, because Tran is not a person who is eligible for the services, programs and activities PISD offers, he does not qualify as "a qualified person with a disability" as defined by Title II,  and thus fails to state a Title II claim for that reason as well.[3]

## III.  RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that  Defendant Pflugerville Independent School District's Amended Motion to Dismiss (Dkt. No. 9) be **GRANTED** and that Plaintiff's claims be **DISMISSED** for failing to state a claim on which relief may be granted.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

---

[3]As alluded to earlier, Tran could likely state a valid claim for employment discrimination under Title I of the ADA.  He has not attempted to do so, however, likely because he released that claim when he settled his termination dispute with PISD.

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 19th day of December, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE